UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| DESHAWN GARDNER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 3:23-cv-03337-CRL |
| ) | |
| DEANNA M. BROOKHART, ) | |
| ) | |
| Respondent. ) | |

OPINION

Before the Court is Petitioner DeShawn Gardner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.)

I.    BACKGROUND

**A.  Prison Disciplinary Proceedings**

Gardner is serving a 85-year prison sentence for first-degree murder related to his involvement in the Black Disciples gang as a gang leader. *People v. Gardner*, 2013 IL App (1st) 110341-U, ¶¶ 3-27. He is currently serving his sentence in the Lawrence Correctional Center in the Illinois Department of Corrections (IDOC). (Doc. 1 at 1.) The Black Disciples street gang is considered a "security threat group" by the IDOC, because the gang poses a threat to the public, staff, and other inmates. (Doc. 12 at 2.) As a security threat group, the activity of the Black Disciples is monitored by IDOC. *Id*.

On November 11, 2016, Gardner was issued an Offender Disciplinary Report (ODR), alleging that Gardner's monitored telephone calls between 9/18/2016 and 11/11/2016 showed that Gardner had called another known Black Disciples gang leader

who then merged phone calls with other gang members. (Doc. 13-1 at 209–10.) Additionally, the ODR stated that Gardner used "Black Disciple Security Threat Group verbiage, specifically in reference to other Black Disciple affiliates as 'B,' which is an identifier to those affiliates with the Black Disciple Security Threat Ground." *Id*. The ODR cited Garner for two offenses: 205 Security Threat Group of Unauthorized Organizational Activity and 310 Abuse of Privileges. *Id*.

On the ODR form, Gardner requested "a copy of the phone record[s] and a copy of the phone list to show that he never asked for a three way [call]" and requested a witness to appear on his behalf. *Id*. Gardner also submitted a written response in which he denied any wrong doing and requested transcripts of the calls. (Doc. 13-1 at 44–46.)

The prison's Adjustment Committee held a hearing just over 24 hours later, at which Gardner was present, his requested witness made a statement, and Gardner's written response was considered. (Doc. 13-1 at 204.) However, no phone transcripts were provided, nor was any reason given for their denial. *Id*. The Adjustment Committee found Gardner guilty of both cited offenses and, in addition to other disciplinary actions, revoked one year of good-conduct credits. Its findings were explained in a Final Summary Report. (Doc. 13-1 at 204–05.)

Gardner submitted a grievance alleging that the disciplinary proceedings violated his due process rights. (Doc. 13-1 at 51–63.) The responding grievance officer recommended that his grievance be denied. *Id*. at 65. The IDOC Administrative Review Board then reviewed the record and denied the grievance, finding no due-process violation and agreeing that Gardner had committed the offenses. *Id*. at 67.

B. **State Court Proceedings**

Gardner then turned to his state court remedies and filed a complaint for a common-law writ of certiorari against officers of the IDOC, which sought review of his disciplinary proceedings. *Gardner v. Hough*, 2020 IL App (4th) 190180-U, ¶ 5. He alleged that his due process rights were denied when his good time credits were denied without giving him the opportunity to present evidence in his defense and he alleged that the defendants violated IDOC regulations. *Id.* at ¶10. The state trial court granted the defendants' motion to dismiss, and Gardner appealed. *Id.* On appeal, the Illinois Appellate Court affirmed the dismissal of his claims regarding violations of IDOC regulations, but remanded for further proceedings on Gardner's due process claims. *Id.* at ¶¶20–21.

On remand, the defendants answered the complaint and filed a motion for summary judgment. *Gardner v. Hough*, 2022 IL App (4th) 210186-U, ¶ 7. Defendants included a declaration from Correctional Lieutenant Joseph Jennings. (*See* Doc. 13-1 at 194.) In the declaration, Jennings explained that the IDOC Intelligence Unit monitors and records selected inmate telephone calls to monitor and deter Security Threat Group activity. *Id.* at ¶ 4. Further, "[w]ith very limited exceptions, IDOC employees who do not work in the Intelligence of Internal Affairs units do not have access do not have access to these telephone call recordings," nor due employees assigned to review inmate disciplinary reports or inmates. *Id.* at ¶¶ 5–7. He explained that "[t]he disclosure of Intelligence Unit documents, including selected telephone recordings, would be detrimental to the goals and missions of the Intelligence Unit because it could potentially

reveal the law enforcement investigatory methods utilized by IDOC in its mission to present STG violence and criminal enterprise." *Id.* at ¶ 8. Additionally, Jennings stated that he had listened to a phone call recording from October 16, 2016, and that the telephone recording could be made available for *in camera* review by the trial court if necessary. *Id.* at ¶¶ 9, 16.

Gardner filed a response, claiming that Jennings' declaration contained false statements. *See Gardner*, 2022 IL App (4th) 210186-U at ¶ 7. As support, he attached copies of unrelated disciplinary records in which he claims that IDOC employees did have access to intelligence unit recordings and documents. *Id.* Defendants filed a motion to strike the records, which the trial court granted. *Id.* The trial court granted the defendants' motion for summary judgment, finding that Jennings' declaration satisfied the applicable due process requirements. *Id.*

Gardner again appealed, but the Illinois Appellate Court affirmed the judgment. The Illinois Appellate Court, citing *Wolff v. McDonnell*, 418 U.S. 539 (1974), and *Ponte v. Real*, 471 U.S. 491 (1985), found that Gardner "did not have an absolute right to the transcripts he requested, but he did have a right to an explanation, 'in a limited manner,' for the refusal." *Gardner*, 2022 IL App (4th) 210186-U at ¶15. The Illinois Appellate Court further found that Jennings' explanation was logically related to institutional safety or correctional goals, so Gardner was not denied due process when his request to present transcripts of the monitored phone calls was denied. *Id.* The Illinois Appellate Court also found that the trial court properly struck Gardner's unrelated disciplinary records from the record. *Id.* at ¶16. Gardner filed a Petition for Leave to Appeal with the Illinois

Supreme Court, which was denied on September 28, 2022. *Gardner v. Hough*, 197 N.E.3d 1137 (Ill. 2022).

### C. Federal Habeas Petition

Gardner filed this federal Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) on September 29, 2023, in the District Court for the Southern District of Illinois, again challenging his disciplinary proceedings. Gardner raises the same five grounds for relief that he raised in his state court appeals:

1) "Whether plaintiff stated a cause of action under writ of certiorari" (Doc. 1 at 11);

2) "Whether the circuit court erred in granting motion for summary judgment in favor for defendants[,] [b]ecause Gardner's due process [rights were] violated before, during, and after the disciplinary proceeding" (Doc. 1 at 14–16);

3) "Whether the circuit court erred in granting defendants motion to strike Exhibit 6 of Gardner's opposition motion to defendants' motion for summary judgment" (Doc. 1 at 17);

4) "Whether the circuit court erred in allowing the defendants to argue, in their reply brief for summary judgment, that Lt. Jennings' declaration is new evidence" (Doc. 1 at 20); and

5) "Whether the circuit court erred in allowing Lt. Joseph Jennings perjured declaration as evidence against Gardner in defendants' motion for summary judgment." (Doc. 1 at 23.)

The case was subsequently transferred to this district. (*See* Doc. 5.) Respondent filed an answer arguing that the Illinois Appellate Court correctly found that Gardner's disciplinary proceeding satisfied due process. (Doc. 12.) Gardner has filed a reply. (Doc. 15.)

## II.     LEGAL STANDARD

Federal habeas review is not "a substitute for ordinary error correction through appeal," but rather "is an extraordinary remedy that guards against extreme malfunctions in the state criminal justice systems." *Shinn v. Ramirez*, 596 U.S. 366, 367 (2022) (internal citations omitted). Before reaching the merits of a habeas petition, a federal court "must ensure that [the petitioner] fairly presented the claim 'through one complete round of review in state court.'" *Gonzales v. Eplett*, 77 F.4th 585, 590 (7th Cir. 2023) (quoting *Brown v. Eplett*, 48 F.4th 543, 552 (7th Cir. 2022)); 28 U.S.C. § 2254(b)(1).

If the exhaustion requirements are met, then, if the state courts reached a decision on the merits, the Court still must defer to "the last reasoned state court decision on the merits." *Gonzales*, 77 F.4th at 591. "Under the Antiterrorism and Effective Death Penalty Act ('AEDPA'), [a] federal court may grant a federal petition for habeas corpus only if the state court's ruling on the federal constitutional question 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Snow v. Pfister*, 880 F.3d 857, 863–64 (7th Cir. 2018) (quoting 28 U.S.C. § 2254(d)); *White v. Ind. Parole Bd.*, 266 F.3d 759, 766 (7th Cir. 2001) (Section 2254(d) applies to claims challenging revocation of good-conduct

credits when the state system allows for judicial review). A state court's decision is "contrary to" clearly established federal law "if the state court 'applie[d] a rule different from the governing law set forth' in Supreme Court decisions or decided a case differently than the Supreme Court 'on a set of materially indistinguishable facts.'" *Corral v. Foster*, 4 F.4th 576, 582 (7th Cir. 2021) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Coleman v. Hardy,* 690 F.3d 811, 814 (7th Cir. 2012) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000). This Court's review is limited to the record that was before the state court.

### III. DISCUSSION

#### A. Gardner's Due Process Claim (Ground Two)

Gardner's core habeas claim is found in ground two of his Petition, in which he argues that the state court wrongly found that his due process rights were not violated during his prison disciplinary proceeding. Gardner does not expand upon this claim in his petition, but the record shows that in his state court proceedings, Gardner's argument was that his right to present documentary evidence was violated when his request for transcripts of the relevant phone conversations was denied. This claim was presented for one complete round of review before the Illinois state courts and adjudicated on the merits by the Illinois Appellate Court on Gardner's appeal after remand in *Gardner v. Hough*, 2022 IL App (4th) 210186-U. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (federal court looks to the last reasoned state-court decision). Accordingly, this Court's review is

governed by § 2254(d), which means that Gardner may only obtain relief if "the state court's ruling on the federal constitutional question 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Snow v. Pfister*, 880 F.3d 857, 863–64 (7th Cir. 2018) (quoting 28 U.S.C. § 2254(d)).

Here, the Illinois Appellate Court applied the appropriate Supreme Court precedent. Under federal law, prisoners have a statutory right to good conduct time and the loss of such credits affects a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 448 (1985); *see also Jones v. Cross*, 637 F.3d 841, 845 (7th Cir. 2011). Due process requires that prison administrators cannot revoke good time credits without "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Hill*, 472 U.S. at 454 (*citing Wolff,* 418 U.S. at 563-67). Further, the findings must be "supported by some evidence in the record." *Id*. Prison officials need not justify their decision to deny an opportunity to call witnesses or present documentary evidence within the administrative record, but may be required to explain their decision if later challenged. *Ponte v. Real*, 471 U.S. 491, 497 (1985). Applying this precedent, the Illinois Appellate Court found that Gardner was not deprived of his due process right to present

documentary evidence because while prison officials "did not provide a contemporaneous explanation for the denial," the later-provided explanation was logically related to institutional safety or correctional goals. *Gardner v. Hough*, 2022 IL App (4th) 210186-U, ¶ 15.

The Illinois Appellate Court also reasonably applied the facts of Gardner's case to the law in reaching the decision. Gardner was not entitled to a contemporaneous explanation for why his request for the phone records was denied, *Ponte*, 471 U.S. at 497, and subsequent explanation was a sufficient reason for the denial. As stated above, Lt. Jennings explained that "[t]he disclosure of Intelligence Unit documents, including selected telephone recordings, would be detrimental to the goals and missions of the Intelligence Unit because it could potentially reveal the law enforcement investigatory methods utilized by IDOC in its mission to present STG violence and criminal enterprise." (Doc. 13-1 at 195.) This explanation is logically related to institutional safety or correctional goals. As Respondent states, one potential safety issue with providing the transcripts of the phone records to Gardner, who is a leader of the Black Disciples gang, is that it "would allow [Gardner] and Black Disciples to identify what code words had alerted the Intelligence Unit to the threat, so gang members could change tactics and avoid using such words in the future." (Doc. 12 at 10.) The Court easily finds that the Illinois Appellate Court's conclusion that this explanation satisfied due process is a reasonable application of the law.

The Court notes that, as presented in the state court, Gardner's due process claim only concerns the denial of his right to present phone records as documentary evidence.

However, in its response, the State highlights that the record shows that Gardner's due process rights were not otherwise violated either because he was provided with sufficient notice, was allowed to present other documentary evidence and witnesses, and a written statement was provided explaining the decision that was based on, at a minimum, "some evidence. (Doc.12 at 9–11.); *see also Wolff*, 418 U.S. at 558. In his reply brief, Gardner now argues that there was no evidence to support his charges.

To the extent that this claim is properly before the Court and not procedurally defaulted, it is meritless. Gardner was provided with the ODR, which provided written notice of the charges against him, more than 24 hours prior to the hearing. (Doc. 13-1 at 204–06.) At the hearing, other than the denial of the request for phone records, Gardner was allowed to present a witness and other documentary evidence. After the hearing, the Adjustment Committee also issued a written Final Summary Report, explaining the evidence relied upon and the basis for its decision finding Gardner guilty of both infractions. (Doc. 13-1 at 204–05, 207–08.) Specifically, under the heading "Basis for Decision," the Adjustment Committee stated it credited and relied upon (1) the ODR, which detailed the results of the Intelligence Unit's investigation into Gardner's phone conversations and identified Black Disciples Security Threat Group leaders with whom Gardner had communicated; (2) the Hearing Investigator Report made before the hearing, in which the investigator "followed up with [Internal Affairs]," to confirm the contents of the recorded phone calls; (3) the investigation of the incident; (4) identification of Gardner by his state ID card; (5) Gardner's conduct in engaging in 3-way calls; and (6)

Gardner's use of Security Threat Group verbiage. *Id*. at 204. This evidence was sufficient to meet the "some evidence" standard.

Gardner argues that this evidence is false and that "[t]here never was any evidence, whatsoever, that the fact finder. . . can use against [Gardner] to substantiate a guilty verdict for the charges." (Doc. 15 at 36). However, Gardner's claim that the evidence is "false" does not make the evidence non-existent. Due process only requires "some evidence." This means that even though the "best evidence" of his guilt or innocence of the offenses may be the phone transcripts, the Adjustment Committee did not violate due process by relying on the reports of others who had listened to the recordings. Nor did the Adjustment Committee violate Gardner's due process rights by crediting these accounts over Gardner's statements. Accordingly, the Court finds that Gardner's due process rights were not otherwise violated.

B. **Gardner's Remaining Claims (Grounds One, Three, Four, and Five)**

Gardner's remaining grounds for relief—one, three, four, and five—do not directly address alleged errors in Gardner's disciplinary proceeding, but address alleged errors in the rulings of the state trial court. None of them are claims for which he can independently obtain federal habeas relief, nor do any of them impact the finding that his due process rights were not violated.

In ground one, Gardner lists his ground for relief as "[w]hether plaintiff stated a cause of action under writ of certiorari." (Doc. 1 at 8.) In his reply, he expands on this claim somewhat, stating that the he is alleging that there was "no evidence, whatsoever, in the record that could support the State Court's adjudication of [Gardner's]

claims."(Doc. 15 at 11.) Explained in this manner, the Court finds that the claim is essentially an argument that the state court reached the wrong decision on his due process claim. As the Court already addressed Gardner's due process claim above and determined that the state court's decision is entitled to deference, this claim is denied for the same reasons.

To the extent that Gardner was referring to the state trial court's initial decision to grant the defendants' motion to dismiss, as Respondent suggested, the claim is moot as well as non-cognizable in federal habeas. The Illinois Appellate Court already reversed the trial court's initial order, and found that he did state a cause of action under writ of certiorari on his due process claims. *See Gardner v. Hough*, 2020 IL App (4th) 190180-U. Accordingly, this claim is moot. Moreover, habeas relief is only available for petitioners in custody who are attacking "the legality of that custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Assuming Gardner is claiming that the state courts wrongly found he did not state a cause of action, that claim is irrelevant to habeas relief. Rather, the only issue upon which habeas relief could be granted is if the decision to revoke Gardner's good time credits did not comply with the federal constitution. As explained above, the state court's decision that his proceedings did comply with due process is entitled to deference.

Gardner's grounds for relief three, four, and five, concern whether the state trial court erred in admitting and considering Lt. Jennings' affidavit and not considering Gardner's exhibits. These claims also provide no independent basis for habeas relief because they concern only the state court's evidentiary rulings at summary judgment, which could only be a violation of state law. *See Estelle v. McGuire,* 502 U.S. 62, 68 (1991)

("[A] federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"). Similar to his claim in ground one, these claims do not address the legality of his confinement, so are not independent habeas claims. *See Preiser*, 411 U.S. at 484.

Additionally, read liberally, to the extent that Gardner intended to argue that these errors led to the state court reaching the wrong decision on the merits of his due process claim, the Court does not find these evidentiary rulings impact his due process claim. In ground three, Gardner alleges the state trial court should have considered his exhibits that he argues show that Lt. Jennings lied in his declaration. (Doc. 1 at 17.) Similarly, in ground five, Gardner argues that the state trial court should not have allowing the declaration to be considered because it was perjured. (Doc. 1 at 23.) Gardner alleges the declaration is perjured because the declaration states that employees assigned to review inmate disciplinary reports do not have access to the telephone call records, (Doc. 13-1 at 194 (¶¶5–7)), but Gardner's proposed exhibits showed that in other disciplinary hearings employees assigned to review inmate disciplinary reports did have access to the telephone call records. However, aside from the fact that the declaration itself acknowledges that there are "very limited exceptions" to this rule, Gardner does not provide any evidence that *inmates* would ever have access to these telephone call records. Put simply, Gardner's claims could not impact the finding that denying his request for the phone records was logically related to institutional safety or correctional goals.

Finally, in ground four, Gardner argues that the trial court should not have "allow[ed] the defendants to argue, in their reply brief for summary judgment, that Lt.

Jennings' declaration is new evidence." (Doc. 1 at 20.) However, as explained above, Gardner was not entitled to a contemporaneous explanation for the denial of his request for phone records. *Ponte*, 471 U.S. at 497. Accordingly, there is no federal constitutional issue with the state court considering and accepting an argument that allowed the state trial court to review Lt. Jennings' declaration. The Court denies this ground for relief as well.

## IV.   CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability in order to appeal to the court of appeals from "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A). However, the Seventh Circuit held in *Walker v. O'Brien*, 216 F.3d 626 (7th Cir. 2000), that the certificate of appealability requirement does not apply to a habeas petitioner challenging a prison disciplinary decision rather than his underlying conviction. 216 F.3d at 638. The Seventh Circuit has declined to overrule this precedent despite a circuit split. *Grandberry v. Keever*, 735 F.3d 616, 617 (7th Cir. 2013); *see also Love v. Vanihel*, 73 F.4th 439, 445 n.3 (7th Cir. 2023). Respondent argues that this case is distinguishable because *Walker*, *Granberry*, and *Love*, all involved prison disciplinary proceedings in Indiana, where no state court judicial review is available. However, in *Walker* the Seventh Circuit specifically found that "[t]he possibility of limited judicial review does not, in our view, convert the prisoner's administrative detention into something that arises from process issued by the state court." *Walker*, 216 F.3d at 638. Accordingly, pursuant to circuit precedent, the Court finds a certificate of appealability is not necessary in order for Gardner to file an appeal.

Nonetheless, if a certificate of appealability was required, the Court notes that it would decline to issue a certificate of appealability. A certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Here, the Court does not find that Gardner has made such a showing.

**IT IS, THEREFORE, ORDERED:** Petitioner DeShawn Gardner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) is DENIED. This case is CLOSED. The Clerk is DIRECTED to issue the judgment in favor of Respondent.

Signed on this 5th day of November 2024.

/s/ Colleen R. Lawless
Colleen R. Lawless
United States District Judge